Case number 23-1723, Raleh Container Terminal SA v. Republic of Djibouti Headbalance. Mr. Madden for the Headbalance, Ms. Lehitsky for the Advocate. Hi, counsel. This is Judge Rogers. I am participating orally only as a result of Internet problems with Wi-Fi. Thank you, Judge Rogers. You may please support. Matthew Madden for Appellant for the Republic of Djibouti, which is also the two-thirds majority owner of Doraleh Container Terminal SA or DCT, which is the appellee here in the petitioner below. I would like to reserve three minutes of my time for rebuttal. Section 207 of the Federal Arbitration Act governs proceedings in the United States to confirm foreign arbitration awards. That statute says that only a party to the arbitration may petition for an order confirming its award and that it must do so within three years of the award. In this Section 207 case, the Republic objected that the arbitration awardee, DCT, had not validly authorized the confirmation petition filed in its name. The Republic was joined in that objection by DCT's own provisional administrator who informed the District Court that she had exclusive authority to manage DCT's affairs, that she had not authorized the petition. The counsel on the petition is no longer authorized to act for DCT and was solely acting for DCT's minority shareholder, DP World Djibouti. The District Court did not address this particular issue, yet proceeded with affirming the non-existence of the arbitration award. I do want to go back to the provision with respect to who was the proper party to represent because if a case goes through, I would think that that would be an issue concerning to make sure that we have all the parties there, particularly when the statute says a party to the arbitration. Can you speak to that and even what authority you would have with respect to how do we go about making that determination of who is the true representative capacity? Right, I agree. That's exactly the issue here, Your Honor. The District Court denied the Republic any discovery into counsel's authority or the petition's validity in the District Court, and then it held in its opinion that Section 207 actually prevented the Court even considering the Republic's authority objection. It instead ruled that whether or not counsel has authority to act for DCT had, quote, no bearing on the Court's decision to confirm the awards. This Court should reverse that decision for either of two grounds. Section 207's party to the arbitration requirement has to be either a merits issue on which you can deny the petition or a jurisdictional question on which you can dismiss it, but it can't be neither, which is what the District Court held, which would render Section 207's party to the arbitration provision mere surplusage. What the District Court... Counsel, another way to look at that is, if not, this is Judge Rogers, that jurisdictional issues, as in any civil litigation, are available to a party who are proceeding to raise, including whether or not the plaintiff or petitioner is a proper party, and if you don't raise it timely, it's too late. Now, your argument is basically a reversal of that? Is that my understanding? No, Your Honor. Two arguments here. So, we do agree that the party to the arbitration argument is jurisdictional. That's how Congress labeled the statute in Section 207. No, no. My question did not assume that. I was based on... I was answering, asking the question based on your presentation of it. In answering my question, do not assume that I am saying that it is jurisdictional. Okay. If Section 207 is not jurisdictional, if I'm understanding the question correctly, then it's a merits issue. It would be an element of a claim under Section 207 would be that it had to be brought by a party to the arbitration. The District Court here held that it was no such thing at all. It wasn't an element of the statute at all, and that the court couldn't even consider whether counsel is authorized by the party to the arbitration. But just on the merits, that gets Section 207 exactly backwards. The opposition brief, in fact, concedes at page 25 that properly understood Section 207 implicates who has a valid cause of action, a party to the arbitration. This, the opposition brief says, is a merits issue. But District Court held otherwise and said Section 207 prevented it from considering whether it had a proper party before it on the merits, and that it wouldn't even consider that question, which had no bearing on the merits of the case before it. As we point out in their brief, that's an implausible way to read the statute because it also contains a three-year statute of limitations. The three-year statute of limitations in Section 207 is not a New York Convention, substantive defense to the validity of the award. It's a rule imposed by Congress on how arbitration proceedings can be filed and proceed. If we were to agree that the court needed to decide the question of authority, is that a question that the District Court would decide, or would that have to then go back to arbitration? It would be a question that the District Court would decide if this court doesn't decide it on the record. So because the provisional administrator of DCT filed declaration in the record below saying she did not authorize counsel to file the petition, we believe the court can reverse on the current record. But if not, it would go back to the District Court for fact-finding. And that's important because... And could the District Court then send it back to arbitration? No, that's what's important here. And I think the District Court got this importantly wrong. Our challenge is not a challenge to the underlying validity of the awards. The awards are the awards, they're done. They were decided by the London Tribunal, and we bring a challenge to the validity of the awards themselves. Our challenge is solely a Section 207 challenge to the validity of the confirmation proceeding itself in federal court in the country. It's very convenient to not challenge the award, but make it unenforceable. If the proper party brings the petition, if DCT's provisional administrator were to decide that that's the approach she wants to take on behalf of the arbitration awardee, then that's her prerogative. And for sure, then there would be effectively no other defenses left to confirmation and the case could proceed. But what's happened here is that she's decided otherwise and asked the court to dismiss the petition. So there's some suggestion in the District Court opinion that she forfeited that argument in arbitration, right? There was no question. The arbitrator didn't decide the question, and it wasn't presented to the arbitrator. So why should any of the courts consider that issue? Yeah, that's twice wrong. So for one thing, this issue could not have been forfeited during the arbitration because Section 207 doesn't apply. No confirmation petition had yet been filed. So there are different questions that have to be addressed by different courts. You can't object to the later enforcement of an award before the award's even been granted by the arbitrators. The question about who has authority is a question that could have been raised in arbitration. And it was. In fact, the issue was first raised by the Republican Council in his November 14, 2018 email to both the provisional administrator and the tribunal, in which he said that DP World and its counsel at Quinn Emanuel were, quote, mandated to act for DCT and that by continuing to do so, it, quote, clearly disregards the powers entrusted to the, end quote, provisional administrator to manage DCT's affairs. And so you're referring to an email confirming a statement that you believe that they weren't represented. But when would you say was the actual revocation of Quinn Emanuel's power of attorney? Did you all do something before then? So the Djibouti Court of First Instance had appointed the provisional administrator DCT in September of 2018 in a proceeding that DP World and its counsel did not appear at. That was later confirmed after the hearing on the counterclaims and the arbitration on November 15, 2018 by the Court of the First Instance in a contested proceeding. And then if you want to play it out, there was actually further appeals brought by DP World and its counsel in the Djibouti courts all the way up to the Djibouti Supreme Court that were unsuccessful. So eventually the order appointing the provisional administrator and giving her sole and exclusive authority over DCT was affirmed all the way up the levels of Djibouti's courts. It was in the midst of that process that this issue was raised by the Republic's counsel in his email to the tribunal and to the provisional administrator. The district court doesn't acknowledge that email and it's an opinion, but it's acknowledged at page 11 of the opposition brief. And in a November 26 letter to the tribunal, Quinn Emanuel admitted that the Republic's lawyer had complained that Quinn Emanuel was not authorized to act for DCT. That's at JA 422 to 429. And was this power of attorney to be governed by English law? The original power of attorney granted by DCT's board to Quinn Emanuel, which was also DP World, the Minority Shareholders Council, I believe that that's the 2013 or 14 power of attorney. I believe that was governed under its terms by English law. But DCT is a Djibouti corporation that's, its governance is responsible to Djibouti law. And all of DP World's claims to the contrary have been rejected by Djibouti's courts. And earlier you said that you're not objecting to the arbitration award itself. So you're, don't believe that there were any grounds for denial under Article 5. Right. To be clear, we had objections under the convention that we pressed in the district court. Those were denied and we have not raised those on appeal. It does seem that the parties here and all of their contractual agreements were trying to avoid Djibouti law. I mean, they're governed by arbitration, they're governed by UK law. And so how does that affect the analysis of authority here? And there was a UK court that I think enjoined Djibouti from appointing a provisional administrator. Not quite. There was an injunction that prevented a Djibouti agency from interfering in a separate arbitration, I think is what your honor is referring to. The parties did contract to have many of their disputes governed by UK law and to be arbitrated. And many of them were. In fact, the arbitration was brought in the first instance by the Republic. We're talking about counterclaims that were brought by DP World and DCT. But the entity has, there's no dispute that the entity is a creature of Djibouti law that was enacted by a Djibouti statute. It has to be, its governance has to be governed by Djibouti law, much like a Delaware corporation can't contract out of Delaware law applying to its establishment in Delaware. And so once there was a disagreement among the majority and minority shareholders, the two parties here, or really the two parties here, over the governance of that entity and the court held that it had become unable to do its business, the Djibouti court stepped in and appointed what's effectively a corporate trustee. So why did the provisional administrator here not seek to dismiss the claims in arbitration? Why did she seek only to stay them? I don't know. Among other things, she didn't testify. DCT's purported counsel didn't have her appear at the proceeding or depose her. I can speculate that it had to do with the fact that the, and you can see this, I think, in her letter, that proceedings on her appointment weren't yet final. So she had been appointed in September, as I said, in a one-party proceeding that the immediate challenge to that filed on October 4th. The counterclaims hearing went forward on November 9th. Her appointment still wasn't final at that time. It was only on November 15th that the trial court affirmed her appointment in a contested proceeding. And yet there were still appeals. So her letter says this will still be decided by the Djibouti courts. It's still an open issue. And that's why I think she asked the panel to stay the proceedings while those proceedings in Djibouti ran their course. The tribunal ended up saying, we don't need to stay this because we've already held the hearing. We don't need anything else from the parties. And so it no longer matters to us which the right counsel is for DCT. We've already heard from them. We can proceed to file an award without needing anything else from the parties. Of course, we disagreed with that decision, but I think that's why it happened on a stay basis instead of a sort of a full challenge to the counterclaims themselves. Judge Rogers, do you have any further questions? No, I think you've covered what I was concerned about. Thank you. Thank you. I need some time on my phone. Good morning. I please the court. Dennis Frenitsky from Quinn Emanuel on behalf of the Appellee Durala Container Terminal. I'd like to start with the forfeiture issue. Specifically, Judge Hogan's finding that the Republic had forfeit its argument that is raising in these proceedings that my firm and DCT lacks authority to prosecute these recognition and enforcement proceedings by failing to press that issue in the arbitral proceedings. And I would submit, I mean, I think the colloquy this morning actually demonstrates that the Republic did forfeit that argument by failing to press it in the arbitral proceedings. The record is clear that the Republic's position is that Ms. Tatterall took on the authorization to speak for DCT during the waning days of the counterclaim hearings before the awards which were rendered in these cases, in this case in March of 2019, were rendered. It's clear that the Republic was live to that issue. That's obvious from the letter that the Republic wrote to Ms. Tatterall and copied the tribunal on November 14th of 2018. Even if it's the case that they didn't raise the issue in the arbitration, I mean, questions of authority, I mean, there are a number of cases that suggest questions of authority can be raised at any point in a proceeding. That is correct, Your Honor. Questions of authority could be raised at any point during the arbitral proceedings. And in fact, the award wasn't rendered until March. The Republic had five- Not just the arbitral proceedings, but I mean, say the provisional administrator hadn't been appointed during the arbitration, but was appointed during the litigation before the district court. Are you suggesting they could never challenge authority at that stage? No, I'm not, Your Honor. It's factually distinguishable, however, because the Republic was of the position that my firm and DCT lacked authority to prosecute the proceedings while those proceedings were underway, and they failed to press the issue during those proceedings. And as a consequence of their failure to do so, even though the tribunal didn't explicitly rule that DCT had authority to go on prosecuting, or my firm did, it did so implicitly. It's like at the hearing on November 9th on the counterclaims, which the Republic chose not to appear for, at the very beginning, counsel for my client informed the tribunal. Of course, the tribunal must be satisfied that we are properly before you, before you can continue. That is at JA-422. And the tribunal chose to continue with the proceedings, implicitly, therefore, finding that Emanuel and DCT had authority to go on, right? So what did the district court then decide? Did the district court decide that this issue was forfeited? I mean, it's a little bit murky. Or is it your position that the district court could not even address the question of authority? Your Honor, had the authority, had the facts that the Republic is pointing to transpired following the arbitral, the rendering of the decisions that we're seeking to recognize here, the situation would be very different. And we wouldn't dispute that the Republic would have, like, would be able to raise the issue of DCT's in the district court proceedings. But because all of that happened, while the Republic had an opportunity to raise it with the tribunal and chose not to, that issue was forfeit. And by forfeit, I mean, specifically, the rendering of the decision, the rendering of the awards in those proceedings gave rise to race judicata effect. And that issue could not be relitigated in the district court proceedings, absent some intervening change in the facts, which is not present here. But one thing that still concerns me is that in the order, the district court says Djibouti's authority has no bearing on the court's subject matters jurisdiction. And there doesn't seem to be a real thorough response with respect to whether or not exists or not or by whom. The district court seems to be more focused on whether to affirm the award. And I think that's a different statement from whether or not any of these exceptions are met through the authority, which clearly it doesn't anticipate in the exceptions. And so the district court goes on to affirm the award, but really just kind of pushes aside this addressing it. Your Honor, I agree that the decision is not a model of clarity in terms of separating out what the court meant by finding the argument had been forfeit from what the court meant. It was clear what the district court meant when the district court ruled that question of authority doesn't go to subject matter jurisdiction or to Article III standing for that that. And I don't believe there's really any question about subject matter jurisdiction or standing here. The real issue is whether the argument of authority was forfeit. And my understanding of the judge's ruling, where he points out that the Republic had an opportunity to raise these issues in the waning days of the arbitration, being on notice of all those proceedings and their failure to do so resulted in forfeiture, which the meaning of which is race judicata effect on any issues that were actually pressed or litigated in the proceedings or could have been pressed and should have been pressed and litigated proceedings. So do you just take the position that the argument is forfeited or that Djibouti failed to actually exercise revoking Quinn Emanuel's power of attorney? Well, I mean, our position is that Quinn Emanuel's power of attorney was never revoked. It's also our position that it wouldn't be Djibouti's, it wouldn't be up to Djibouti to revoke Quinn Emanuel's power of attorney either. I mean, the question of whether Quinn Emanuel's power of attorney could be revoked and who has the power to speak to that, right? That's clearly a question that rests in the competence of an LCI arbitration tribunal. The arbitration clause in this case is it's exceptionally broad. And I don't think that there's any dispute that applies to any dispute among the shareholders in DCT over management issues, right? So if we disagree, you're just assuming you disagree that this issue was forfeited in the arbitration. And then with the question of arbitration to be decided? Well, if this were remanded to the district court, then our position at the district court would be that the issue was adjudicated by, in the arbitral tribunal, right? And therefore forfeit and that forfeiture has effect. If the district court didn't agree with that position, which we believe would be sort of uncertain, but the issue might be arbitrable. If it is, then the proper tribunal for deciding the question would be an LCIA tribunal because the arbitration clause in the relevant agreements is as clear as it could be that that has to be decided by an LCIA tribunal. And if the district court, I mean, what are the principles if we were to remand to the district court, what are the legal principles that you think would be relevant for the district court to consider if it were deciding the question of authority? Right. I mean, ultimately I believe that it would turn on, well, it's a little difficult to answer that question, your honor, because I don't, without knowing exactly sort of the procedural posture in which the arguments were presented. I'm not certain, but I believe it would be relevant. I think there are a lot of complicated questions if there was an actual determination of authority. And so I'm just giving you an opportunity to say what relevant factors you think the district court would need to consider. Well, I believe it would ultimately turn down to a question of comity, right? Should the district, comity, should the district court give effect to a decision from the Jushin proceedings, which were prosecuted ultra in violation of the forum selection provision at present in the underlying agreements, right? In circumstances where the evidence is quite clear that the provisional administrator who purports to speak for DCT is acting in collusion with the Republic to deprive DCT of the value of the benefit of its only valuable asset. I mean, had if Ms. Tatterall were actually in the interest of DCT, she would be doing everything in her power to enforce this award rather than. So are those questions about whether there would be some exception to the internal affair doctrine? I mean, with respect to the fact that Djibouti law controls the Djibouti corporation. Right. Well, your honor, we disagree that this is ultimately a question of Djiboutian law, right? And that's, that comes back to the point that I made a moment ago, which is give effect to the decisions of the Djiboutian courts in this context, where it would so plainly violate not only the forum selection provision, the principles of fundamental principles of public policy and fairness. Why is it not a question of Djibouti law? I mean, you say it's a matter of comedy, but normally we, you know, normally courts look at the law of the place of incorporation. So you're suggesting that there's a public policy exception, that general rule? Your honor, our position is that the internal affairs doctrine wouldn't apply in these circumstances because the parties plainly chose LCIA arbitration governed by English law to resolve any questions arising from disputes, management disputes among the parties. And that's plainly what this was. I mean, in fact, the Republic's own position is that Ms. Tatterall was appointed as a result of a management dispute among the parties. And I don't believe that there's any meaningful dispute that management disputes among the parties are subject to the forum selection provision, which calls LCIA arbitration. So who is your client? My client is DCT. Judge Rogers, any further questions? Hi, I'm afraid you're fading in and out. I was just asking if you had any further questions. No, I'm talking about before that. As I understand it, you were asking counsel to, as it were, list the principles that the district court should consider where we'd back. As I understood it, he was saying comedy. And that's where the two of you have been circling for a while. Is that my understanding of questioning that? All right. So counsel, let me just ask you, you say this, whether your firm had authority to proceed comes within the ambit of the language in the arbitral proceeding about any management dispute. I'm not savvy to that phrase being as broad as you suggest, but you may be right. But a management dispute, it seems to me, is somewhat different than a jurisdictional dispute. Is that not correct? Yes, Your Honor. I do agree that a management dispute is distinct from a jurisdictional dispute, although I would submit that there's really not any question about whether the U.S. courts have jurisdiction over these enforcement and recognition proceedings. The real question is whether there is a hive issue with respect to DCT's authority to prosecute them and my firm's authority to appear on behalf of DCT. I don't disagree with your description, but management disputes, it seems to me, are operational disputes as distinct from whether or not there is a proper party and that party is properly represented. Your Honor, when I made the reference to management disputes, I was referring specifically to the fact that Ms. Tatterall's appointment as provisional administrator refers to the fact that she was appointed as a result of a dispute, a management dispute, within DCT. And under the forum selection provision in the concession agreement underlying this dispute, it's as to the management of DCT are vested in the exclusive jurisdiction of LCIA arbitration. And it was therefore our position that it was improper for the Republic to commence the proceedings in the Dubushan courts to have Ms. Tatterall appointed. But I was specifically, that's the point I was addressing when Judge Rao asked me the question, what are the legal principles that would govern the question of who has authority to speak for DCT if this case were remanded to the district court? And I said that ultimately, I believe one of the relevant principles would be comedy. That is, should the U.S. courts give comedy to a decision of the Dubushan courts, and it was rendered in ultraviarious proceedings and in the context of plain that there's a conflict of interest between Ms. Tatterall and the Republic, that the two are colluding, and that if Ms. Tatterall were actually acting in the interest of DCT, then she would be doing everything that she could to enforce these awards, which are really the only valuable asset that DCT has at this time, rather than doing everything she can to prevent these awards from being enforced. I would submit that if that question were decided as a matter of question in my mind, then it giving effect to the Dubushan appointment of Ms. Tatterall would violate the public policy of the United States, and her appointment shouldn't be given recognition. But I don't believe that we need to get there because the fundamental point, which I believe the district court found, albeit he didn't elucidate, was that the Republic had an arbitration and all foreseeable consequences, including seeking recognition and enforcement of any resulting award. They had an opportunity to do that. They chose not to, even though they had the opportunity to do so, and as a consequence, they forfeit the issue with race judicata effect. Are there no further questions? Well, I just want to comment to say that counsel's response to my question defines his earlier reference to comedy a lot more broadly than I had anticipated, because I thought the argument was that, well, in response to Judge Rouse's question that, well, were we to remand this matter to the district court, then it was counsel's position that the district court should give comedy to what he had earlier argued was an implicit decision as to her authority. But I guess we need not pursue this further at this point. If I could just make one clarifying point and then I'll stand. When I referred to comedy, Judge Rodgers, I apologize if I wasn't clear, but specifically what I was saying is that our position would be the district court should not and cannot give comedy to the appointment of Ms. Tatterall in the facts of this case. Thank you. Thank you very much. I'll give you two minutes on rebuttal. Thank you, and I'll try to be brief. The real problem in this case is that the district court believed it could not consider any of these questions about authority presented in the case, and the key passage is at JA 677, where the court says, further, after finding it has subject matter jurisdiction to hear the petition, this court cannot consider Djibouti's authority argument as an independent ground on which to dismiss the petition. So the court didn't consider Ms. Tatterall's declaration in which she said she had exclusive authority and had revoked any authority held by opposing counsel to represent DCT. It didn't address these questions. If the court were to remand, what would the analysis look like, Your Honor asked? First of all, we should be entitled to the discovery we sought in the district court, where we proposed simple interrogatories and document requests to get a sense of who does counsel actually represent, who is directing counsel's work, supposedly on behalf of DCT, and on what basis. All of that was denied because the district court believed these questions had already been forfeited in the arbitration and were irrelevant to the proceeding in federal court in this country. Second, on forfeiture, counsel said a couple of times that the Republic failed to present the to press the authority question but chose not to. Again, that's just not what the record shows. Republic's November 14th email says that counsel's continued operation on behalf of DC clearly disregards the powers entrusted to DCT's provisional administrator. And then in Quinn Emanuel's own November 26th letter, it agreed that the Republic had complained that Quinn Emanuel was not authorized to act for DCT. That's a quote at 422 to 429. And then finally, just on jurisdiction, there was no argument in opposing counsel's opposition brief or today to explain why Congress chose to title Section 207 a jurisdictional provision if it wasn't referencing the three-year requirement or the party to the arbitration requirement. As we say in a footnote in our reply brief, that can't refer merely to the invocation of jurisdiction elsewhere because other similar provisions in the Federal Arbitration Act aren't titled jurisdiction because they don't have a party to the arbitration requirement. Thank you. Well, the Supreme Court has discussed titles that refer to jurisdiction and decided a number of cases to try to clarify the limitations of what that titling meant. So I don't think that's a very strong argument because it came out, you know, not in a way that would favor your position. That basically, you know, the Congress was pretty casual about what it meant by title. Yeah, it's not our position, Judge Rogers, that every statute in the U.S. Code that has the word jurisdiction in its title necessarily is a jurisdictional provision. Statutes, of course, are interpreted in context. It's just a question of now that the Supreme Court has clarified all that, have you met the requirements that the Supreme Court has established? Right. It imposes a jurisdictional limitation. I think I understand and the Supreme Court has certainly said there is a clear statement rule and it must be clear that that is Congress's intent on the record. Our argument is that if you look at these different statutes in FAA 201 through 208 in context, the only explanation for the appearance of the word jurisdiction in the title to Section 207 is that it must refer to the additional elements that that statute imposes, the three-year requirement and the party to the arbitration requirement. If those aren't jurisdictional, then it's inexplicable why it's not. Thank you. Thank you. It's just finished.
judges: Rao, Childs, Rogers